UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SANDRA OROZCO VELAZQUEZ,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No.  3:26-cv-04111

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Before the Court is Petitioner's *Ex Parte* Motion for Temporary Restraining Order. On May 5, 2026, Petitioner Sandro Orozco Velazquez filed a Petition for Writ of Habeas Corpus, and an *Ex Parte* Motion for Temporary Restraining Order, against Field Office Director of the San Francisco Immigration and Customs Enforcement Office Sergio Albarran, Acting Director of United States Immigration and Customs Enforcement Todd Lyons, Secretary of the United States Department of Homeland Security Markwayne Mullin, and Acting Attorney General of the United States Todd Blanche. Petitioner asks this Court to (1) release her immediately from Respondents' custody and enjoin Respondents from re-detaining her absent further order of this Court; (2) in the alternative, release her immediately from Respondents' custody and enjoin Respondents from re-detaining her unless they demonstrate at a pre-deprivation bond hearing, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community such that her physical custody is required; and (3) prohibits the government from transferring her out of this District and/or removing her from the country until these habeas proceedings have concluded. For the following

United States District Court
Northern District of California

reasons, the TRO is GRANTED as modified below.

## I.    BACKGROUND

According to the record before the Court, Petitioner is an asylum seeker who entered the United States in 2019. She was detained briefly by Department of Homeland Security (DHS) officials but released into the United States on her own recognizance after agents determined that she was not a flight risk or a danger to the community pursuant to 8 U.S.C. § 1226(a) pending her immigration court date in the United States. In 2024, Petitioner filed for asylum and protection under the Convention Against Torture. Petitioner's asylum application is still pending with her next immigration hearing scheduled for May 3, 2027. Petitioner is a mother of four, including a two-year old daughter.

Since her arrival, brief detention, and subsequent release in 2019, Petitioner has made good faith efforts to comply with her supervision terms, attendance at check-ins, and court dates. She has not been convicted of any crimes nor ordered removed. Yet, earlier today, May 5, 2026, Petitioner was detained by ICE at a routine ICE check-in.

## II.    LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may

United States District Court
Northern District of California

TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-04111

only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to ... preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.' " *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

### III.   DISCUSSION

Petitioner has demonstrated a likelihood of success on the merits of her claim that her ongoing detention violates her procedural due process rights under the Fifth Amendment. Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1030–36 (N.D. Cal. 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances). Her release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless she no longer meets those criteria. On this record, no evidence indicates that Petitioner no longer meets that criteria, and thus Petitioner has a strong likelihood of success on the merits.

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that she has "also carried [her] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding

United States District Court
Northern District of California

procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv01434-JST, 2021 WL 783561, at \*3 (N.D. Cal. Mar. 1, 2021) (cleaned up). Meanwhile, the potential harm to the government is minimal: the government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates, by clear and convincing evidence, that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at \*3; *Diaz v. Kaiser*, No. 25-cv05071, 2025 WL 1676854, at \*3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return her to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (*quoting GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25cv-00663, 2025 WL 779743, at \*2 (E.D. Cal. Mar. 10, 2025) (granting a TRO requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below.

## IV.  ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to release Petitioner immediately from Respondents' custody and **ENJOINED AND RESTRAINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing

United States District Court
Northern District of California

Petitioner from the United States.[1] This Order shall remain in effect until May 18, 2026 from the date this TRO issues.

Respondents are **ORDERED TO SHOW CAUSE** in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, on May 18, 2026 why a preliminary injunction should not issue. Respondents shall file a response to Petitioner's motion by no later than May 11, 2026. Any reply shall be filed by May 15, 2026. The assigned Judge may modify this schedule as appropriate.

**IT IS SO ORDERED**.

Dated: May 5, 2026 at 5:20 p.m. PT

_____
RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California

---

[1] Petitioner also asks the Court to order that she remain within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

TEMPORARY RESTRAINING ORDER
CASE NO. 3:26-CV-04111